**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| AHMED DASHAN, M.D. | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No. 08-CV-370-TCK-FHM** |
| | ) |
| STATE OF OKLAHOMA, ex rel. | ) |
| THE BOARD OF REGENTS OF THE | ) |
| UNIVERSITY OF OKLAHOMA, | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Before the Court are Defendants' Motion to Dismiss ("Motion to Dismiss") (Doc. 8), filed

in *Dahshan v. State of Oklahoma, ex rel. Board of Regents of the University of Oklahoma, et al.*,

Case Number 08-CV-186-TCK-FHM ("First Case"); Defendant's Motion to Dismiss, or in the

Alternative, Motion to Consolidate ("Motion to Dismiss or Consolidate") (Docs. 10 and 13), filed

in *Dahshan v. State of Oklahoma, ex rel. Board of Regents of the University of Oklahoma*, Case

Number 08-CV-370-TCK-SAJ ("Second Case"). The Motion to Dismiss and Motion to Dismiss

or Consolidate are made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**I.     Factual Background**

Plaintiff Ahmed Dahshan, M.D. ("Dahshan") was born in Egypt, is a naturalized United

States citizen, and is a practicing Muslim. Dahshan filed a Complaint in the First Case against his

employer, the State of Oklahoma, *ex rel.* the Board of Regents of the University of Oklahoma

("OU"), and two supervisory faculty members within his department, Kevin Donovan, M.D.

("Donovan") and Robert Block, M.D. ("Block"). OU operates a heath sciences center in Tulsa.

Dahshan is a medical doctor who is employed by OU as a tenured Associate Professor of Pediatrics

in the Pediatrics Department of this health sciences center. Dahshan's specialty is Pediatric

Gastroenterology, and his general job responsibilities have been to "educate and train students and residents, provide patient care in his medical specialty of Pediatric Gastroenterology, and engage in the research and publication of scholarly works." (Compl. (First Case) ¶ 10.) At relevant times, Block was the Chair of the Pediatrics Department and Donovan was the Vice Chair of the Pediatrics Department.

Dahshan was, prior to the alleged discrimination, Section Chief of Pediatric Gastroenterology, which is a division of the Pediatrics Department. At the direction of Block, Dahshan prepared a report regarding another faculty member. Donovan described this report as a "disaster." On April 27, 2006, Block rescinded Dahshan's title as section chief, threatened to terminate Dahshan, and threatened to give Dahshan negative references. On May 17, 2006, Dahshan filed an "internal grievance" against Block.[1] Dean Clancey ("Clancey") offered to conduct an internal mediation before the grievance was actually processed. Dahshan agreed, and OU appointed Associate Dean Olsen ("Olsen") as the mediator. At the conclusion of the mediation, Block "offered a plan to reinstate [Dahshan's] title as Section Chief . . . after [Dahshan] participated in a leadership development plan that extended to June 2007." (Compl. (First Case) ¶ 19.) At the advice of Olsen, the parties did not execute any formal resolution. Dahshan alleged that he performed the leadership development plan in good faith but that Block and Donovan "failed and refused to execute it in good faith." (Id. ¶ 20.) Block told Dahshan that his promise to reinstate Dahshan's title as section chief was "not written in stone" and later denied that he ever made such a promise. (Id. ¶ 24.) Olsen told Dahshan that he was ashamed of Block and Donovan's behavior, that he regretted advising Dahshan

---

[1] The Complaint is not clear as to whether this first internal grievance was made to OU's Equal Employment Opportunity Office ("OU-EEOO"), as was Dahshan's second grievance, or whether it was a less formal complaint within the Pediatrics Department.

2

that it was unnecessary to formalize the agreement, and that he should seek legal counsel.  Olsen told Dahshan that he believed Donovan was intolerant of his Muslim religion, was rallying everyone in the department to drive Dahshan out, and was manipulating Block and causing him to act dishonorably.  It was Olsen's opinion that Block would never reinstate Dahshan to section chief or support his promotion to full professor.

In June 2007, almost a year after the internal mediation, Dahshan complained to Clancey of religious discrimination.  Clancey advised him to file an internal grievance with OU-EEOO, which Dahshan did.  At this point, the harassment became "overt" and included recruitment ads being placed on Dahshan's desk, his name tag being removed from his office door, and his business card being changed to delete his specialty and title.  Donovan made certain remarks regarding Egypt and the Muslim religion, such as "is there anyone who is not a Muslim?;" "it would be good if a new faculty was Hindu so when we have to take time for observing our holiday we don't take it all at the same time;" and "this is not Egypt, this is a civilized society."  (*Id.* ¶¶ 30-31.)  Block made the remark that "I will tell the campus security that these are a group of Muslim terrorists who are trying to blow up the campus!" in reference to a meeting of persons interested in starting an Arabic charter school.  (*Id.* ¶ 31.)

On August 23, 2007, Dahshan filed a Charge of Discrimination ("First Charge").  On March 24, 2008, Dahshan filed a second Charge of Discrimination ("Second Charge").  On April 2, 2008, Dahshan filed the First Case, asserting three claims against OU:  (1) religious and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) retaliation in violation of Title VII that occurred following Dahshan's internal reports of discrimination; and (3) violation of Oklahoma public policy.  Dahshan asserted two claims against Donovan and Block:

(1) intentional infliction of emotional distress; and (2) intentional interference with Dahshan's contractual relationship with OU.  On April 28, 2008, Defendants filed the Motion to Dismiss, asserting four arguments:  (1) the first and second causes of action arising under Title VII are time-barred because Dahshan failed to file charges with the United States Equal Employment Opportunity Commission ("EEOC") within the required time; (2) the third cause of action for violation of Oklahoma public policy fails to state a claim; (3) Donovan and Block are entitled to sovereign and qualified immunity; and (4) the fourth and fifth causes of action, which are the state-law claims against Donovan and Block, fail to state a claim upon which relief can be granted.

On June 25, 2008, Dahshan filed a Complaint in the Second Case asserting one claim against OU for retaliation in violation of Title VII.  The retaliation claim asserted in the First Case is based on retaliation stemming from Dahshan's internal reports of discrimination.  (Compl. (First Case) ¶ 43.)  The retaliation claim in the Second Case is based on retaliation stemming from Dahshan's internal report of discrimination as well as Dahshan's filing the First Charge and Second Charge with the EEOC.  (Compl. (Second Case) ¶¶ 8-9.)  Thus, most of the retaliatory actions alleged in the Second Case are identical to those asserted in the First Case.  However, the Complaint in the Second Case adds another "protected activity" – the filing of EEOC charges – that allegedly precipitated retaliatory actions by OU.  On July 23, 2008, OU filed the Motion to Dismiss or Consolidate, arguing that the Second Case should be dismissed altogether or consolidated with the First Case.

On November 10, 2008, Dahshan filed an unopposed motion to amend the Complaint in the First Case to include additional charges of retaliation, which the Court granted.  On November 11, 2008, Dahshan filed a First Amended Complaint in the First Case.  The Amended Complaint is identical to the original Complaint but adds two additional causes of action for retaliation, which are

labeled as the sixth and seventh causes of action. The sixth cause of action includes four additional retaliatory actions occurring after March 24, 2008, (*see* Am. Compl. ¶¶ 61-63), and the seventh cause of action includes four additional retaliatory actions occurring after August 2008, (*see* Am. Compl. ¶¶ 67-72). For purposes of the Motion to Dismiss, which applies only to the first five causes of action, the allegations in the Complaint and Amended Complaint are identical. Therefore, in order to avoid the need for additional briefing, the Court construes the Motion to Dismiss as applying to the allegations in the Complaint and the Amended Complaint.[2]

## II.     Rule 12(b)(6) Standard - Failure to State a Claim

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1969, 1974, 167 L.Ed. 2d 929 (2007)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177. In conducting this inquiry, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the

---

[2] Because this Opinion and Order was drafted prior to filing of the Amended Complaint, the Court's citations are to the original Complaint. However, the Court has verified that such allegations are identical to the allegations in the Amended Complaint.

plaintiff." *Id.*; *see also Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted).

## III.     Rule 12(b)(1) Standard - Lack of Subject Matter Jurisdiction

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms.  *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).  "First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction." *Id.*  "In reviewing a facial attack, the district court must accept the allegations in the complaint as true." *Id.*  "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Id.*  "In reviewing a factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995)).  "In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion."  *Stuart*, 271 F.3d at 1225.

## IV.     Motion to Dismiss - First Case

### A.     First and Second Causes of Action - Title VII Claims Against OU

Defendants move to dismiss the first and second causes of action for discrimination and retaliation, arguing that Dahshan failed to file a timely charge of discrimination with the EEOC.  The issue of whether a plaintiff has *timely* filed an EEOC charge is not a jurisdictional issue; instead, it is an affirmative defense that is subject to waiver, estoppel, and equitable tolling.  *See Zipes v. Trans*

6

*World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Tademy v. Union Pacific Corp.*, 520 F.3d 1149, 1168 (10th Cir. 2008); *Jones v. Unified Gov't of Wyandotte County*, 552 F. Supp. 2d 1258, 1266 n.19 (D. Kan. 2008) ("Under Tenth Circuit law, the *filing* of an EEOC charge is jurisdictional but the *timeliness* of such charge is similar to a statute of limitations, which is subject to waiver, estoppel and equitable tolling.") (emphasis added); *Johnson v. Glickman*, 155 F. Supp. 2d 1240, 1246 (D. Kan. 2001). Ultimately, when timeliness of an EEOC charge is at issue, a defendant bears the "burden to show that [a] plaintiff failed to timely comply with administrative prerequisites, and [a] plaintiff has the burden to prove that the time limitation should be equitably tolled." *Johnson*, 155 F. Supp. 2d at 1246. Because timeliness of an EEOC charge is not a jurisdictional requirement, this aspect of the Motion to Dismiss is pursuant to Rule 12(b)(6), and all allegations in the Complaint must be accepted as true. Defendants did not attach any evidence to the Motion to Dismiss, and the Court has not considered any evidence outside the pleadings in reaching its conclusion.[3]

In order to be timely, a charge of discrimination must ordinarily be filed with the EEOC within 180 days of the challenged employment action. 42 U.S.C. § 2000e-5(b); *EEOC v. W.H. Braum, Inc.*, 347 F.3d 1192, 1196 (10th Cir. 2003). However, the statute provides for an extended 300-day filing period "in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief." 42 U.S.C. § 2000e-5(b); *W.H. Braum, Inc.*, 347 F.3d at 1196. States that have such agencies, *i.e.*, agencies that are empowered to investigate employment discrimination, are referred to as "deferral states." *See W.H. Braum, Inc.*, 347 F.3d at 1196 n.2; *Procter v. United*

---

[3] Out of an abundance of caution, the Court ordered Defendants to submit the First Charge as a supplement to their Motion to Dismiss. However, the Court did not consider this filing in ruling on the Motion to Dismiss.

*Parcel Serv.*, 502 F.3d 1200, 1206 n.3 (10th Cir. 2007) (explaining that a plaintiff had "300 days, rather than 180 days, under the statute because Kansas is a 'deferral state,' that is, a state with an agency empowered to investigate employment discrimination"); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 n.1 (10th Cir. 2003) ("In states in which a state agency has authority to investigate employment discrimination ('deferral states'), Title VII requires claimants to file a charge of discrimination within 300 days of the alleged unlawful employment practice."). Oklahoma is a deferral state. *See W.H. Braum, Inc.*, 347 F.3d at 1196 n.2; *see also* Okla. Stat. tit. 25, § 1502. Therefore, the extended 300-day filing period applies to Dahshan's claims.[4]

### 1.     *Discrete Discriminatory Actions*

"In the context of suits based on discrete acts, a court may easily determine whether the plaintiff filed a claim within the limitations period." *Tademy*, 520 F.3d at 1156. This is because "discrete acts occur on the day that they happen." *Id.* (internal alterations and quotation omitted).

The First Charge was filed on August 23, 2007. All discrete discriminatory actions must have taken place within the 300-day period prior to this date, or no earlier than October 27, 2006. The discrete discriminatory actions alleged in the First Case and their alleged dates include: (1) the rescission of Dahshan's title as section chief (April 27, 2006), *see* Compl. (First Case) ¶ 16; (2) the failure to reinstate Dahshan as section chief as promised during the mediation (deadline for compliance was July 1, 2007), *see id.* ¶¶ 24, 44(B); (3) the failure to promote Dahshan to full professor (sometime following June 2007), *see id.* ¶¶ 22, 23, 33, 44(A); (4) the "protracted freezing"

---

[4] Neither party accurately set forth these legal principles. Dahshan contended that he was entitled to the extended 300-day period because he filed an "internal grievance" with OU-EEOO. OU contended that Dahshan was not entitled to the 300-day period because he failed to file a state discrimination charge.

8

of Dahshan's compensation as a faculty member (sometime following June 2007), *see id.* ¶¶ 33, 44(K); (5) the denial of vacation leave and being forced to work excessive hours (sometime following June 2007), *see id.* ¶¶ 27, 28, 33, 44(E) & (J); (6) forcing Dahshan to again be supervised by Donovan and Block rather than the temporary supervisor he had been assigned (sometime following June 2007), *see id.* ¶ 44(H); (7) the failure to assign Dahshan to the position of Medical Director of Pediatrics Gastroenterology (sometime following June 2007), *see id.* ¶ 44(I); and (8) forcing Dahshan to take a leave of absence (sometime after June 2007), *see id.* ¶ 44(M). Accepting the allegations in the Complaint as true, rescission of Dahshan's title as section chief, which occurred on April 27, 2006, did not occur within the 300-day limitations period. Therefore, barring application of equitable tolling or another equitable doctrine, the rescission of title may not be considered as a discrete discriminatory action forming the basis of Title VII liability. All other alleged discriminatory actions occurred on or after June 2007 and are therefore within the limitations period.

Dahshan contends that the rescission of title, although outside the 300-day period, was still timely filed with the EEOC based on application of equitable tolling. For purposes of this motion to dismiss, the question is whether Dahshan's allegations, accepting them as true, are sufficient to state a claim for equitable tolling. "Under proper circumstances, '[t]he timely filing of a discriminatory charge may be equitably tolled.'" *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1225 (10th Cir. 2001) (quoting *Purrington v. Univ. of Utah*, 996 F.2d 1025, 1030 (10th Cir. 1993)).[5] Equitable tolling is proper "only where the circumstances of the case rise to the level of active deception where

---

[5] The *Bennett* decision was overruled on other grounds by *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002). *See Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003).

a plaintiff has been lulled into inaction" by her employer. *Bennett*, 258 F.3d at 1225 (quoting *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)).  If such deception is alleged, tolling is proper so long as the employee's failure to timely file results from either (1) a deliberate design by the employer, or (2) actions that the employer should unmistakably have understood would cause the employee to delay filing the charge. *Bennett*, 258 F.3d at 1226.  Ultimately, "[t]he decision whether to equitably toll the limitations period rests within the sound discretion of the district court." *Id.*

In his Complaint, Dahshan alleges that he believed he would be reinstated to section chief on or around June 2007, pursuant to the agreement reached by Dahshan and Block following the internal mediation conducted by Olsen on or around June 2006.  Dahshan alleges that, during this period of time, he upheld his end of the agreement but that Block, based at least in part on manipulation and urging from Donovan, "failed and refused to execute [the agreement] in good faith." (Compl. (First Case) ¶ 20.)  Not only did Block fail to uphold his end of the agreement, he denied ever making such a promise to Dahshan as a result of the mediation.  (*Id.* ¶ 24.)  Dahshan further alleges that Olsen informed Dahshan of his belief that Block would never reinstate Dahshan to section chief or support Dahshan's promotion to full professor.  (*Id.* ¶ 26.)

These allegations are sufficient to state a claim for equitable tolling of the limitations period as to the discrete discriminatory act of rescission of Dahshan's title of section chief, which is the only act falling outside the limitations period.  Dahshan's allegations indicate that Defendants, by and through Block and Donovan, deliberately misled Dahshan into believing that, if he jumped through certain hoops, he would be reinstated to section chief within one year's time.  Accepting his allegations as true, Dahshan failed to initially file a charge of discrimination because he was "lulled" into "inaction" by a promise that Block allegedly never intended to keep.  In addition, Dahshan's

10

failure to timely file a claim resulted from either a deliberate design by Defendants, or, at the very least, actions that Defendants should unmistakably have understood would cause Dahshan to delay filing a charge. *See Bennett*, 258 F.3d at 1226. Accordingly, to the extent Defendants move to preclude the April 27, 2006 event from being considered as a discrete discriminatory action because it was not timely filed with the EEOC, such motion is denied because Dahshan has pled sufficient facts to state a claim for equitable tolling. All other discrete discriminatory actions occurred within the 300-day limitations period.

### 2. *Hostile Work Environment*

Unlike discrete discriminatory actions, a hostile work environment is composed of a series of acts that together constitute one unlawful employment practice. *See Tademy*, 520 F.3d at 1156 (citing *Morgan*, 536 U.S. at 117). The 300-day requirement has therefore proven "problematic" as applied to hostile work environment claims. *Tademy*, 520 F.3d at 1156. In addressing this problem, the Supreme Court has directed that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105. In making this determination, the Court must (1) decide whether the alleged actions are part of the same hostile work environment, (2) decide whether at least one act comprising that environment occurred within the 300-day limitations period, and (3) decide whether those actions stemmed from animus based on Dahshan's religion or national origin. *See Tademy*, 520 F.2d at 1157 (performing same inquiry in context of racial discrimination claim). The Court begins "by examining acts within the filing period and consider[ing] whether

11

incidents outside the filing period are sufficiently related to constitute the same employment practice." *Id.*

The Court concludes, after accepting the well-pleaded allegations as true, that several incidents occurred within the limitations period that could give rise to a claim for hostile work environment. These include, but are not limited to, (1) Donovan's alleged statements such as "is there anyone who is not a Muslim" and "this is not Egypt, this is a civilized society," and (2) Block's alleged statement that "I will tell the campus security that these are a group of Muslim terrorists who are trying to blow up the campus!" These ethnic and religious statements are coupled with incidents and actions that Dahshan perceived as pressure to resign from the Pediatrics Department, including having recruitment ads placed on his desk, having his name tag removed from his door, and having his business cards changed to omit certain titles. The statements are also coupled with an acknowledgment from an OU administrator, Olsen, that he believed Donovan to be "intolerant" of the Muslim religion.

The Court further concludes that the April 27, 2006 rescission of title and accompanying threats – which fell outside the limitations period – can be "reasonably viewed as part of the same hostile work environment claim." *See Tademy*, 520 F.3d at 1160. Accepting the allegations as true, Block made the initial decision to rescind Dahshan's title, Block failed to follow through on the mediation, and Block and Donovan were responsible for creating the allegedly hostile environment after Dahshan complained of harassment. In the Court's view, these events are related by "type" and "perpetrator;" they are part and parcel of Dahshan's allegations that Block and Donovan subjected him to a hostile work environment as a method of methodically forcing Dahshan out of his position due to his national origin and religion. *See id.* at 1160-61 (explaining that the type,

frequency, and perpetrator are proper considerations in determining whether there is a sufficient nexus between hostile acts).   In addition, although outside the limitations period, the time span between any hostile conduct occurring prior to October 27, 2006 and the other allegedly hostile events is small compared to that presented in other cases.  *See id.* at 1161 (reasoning that hostile conduct occurring over eight-year span could be considered because the plaintiff was working in the same service unit during that time and the same perpetrator could have been responsible for several of the alleged incidents).  Accordingly, to the extent Defendants move to prevent the April 27, 2006 rescission of title and any subsequent related events that occurred outside the limitations period from being considered as part of Dahshan's hostile work environment claim, such motion is denied.

      B.      Third Cause of Action - "Violation of Oklahoma Public Policy" Against OU

    Dahshan's third cause of action is labeled as "violation of Oklahoma public policy."  The Complaint cites title 25, section 1032(A)(1) of the Oklahoma Anti-Discrimination Act ("OADA") as the underlying public policy that was violated.  This statute provides that it is a "discriminatory practice" for an employer to:

> 1. [] fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of race, color, religion, sex, national origin, age, or handicap unless such action is related to a bona fide occupational qualification reasonably necessary to the normal operation of the employer's business or enterprise[.]

Okla. Stat. tit. 25, § 1302(A)(1).  The Complaint further states that Dahshan seeks judgment on his "*Burk* tort."[6]  In his response brief, Dahshan argues first that he has stated a claim for a *Burk* tort

---

     [6] Under Oklahoma law, a *Burk* tort arises when an individual "is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy."  *Burk v. K-Mart Corp.*, 770 P.2d 24, 29 (Okla.1989).  In this case, there was no "discharge," and it is doubtful that *Burk* applies.  However, the Court

and, alternatively, that his Complaint should be construed as alleging a cause of action directly under the OADA.

Defendants move to dismiss this claim on grounds that OU, as an arm of the State of Oklahoma, enjoys Eleventh Amendment immunity from suit.  Such argument is a facial attack on the Court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Therefore, as explained above, the court presumes that all of the allegations contained in the Complaint are true.  *See Stuart*, 271 F.3d at 1225.  As the party seeking to invoke federal jurisdiction, Dahshan bears the burden of proving that jurisdiction is proper. *See Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003).

State agencies, such as OU, generally possess sovereign immunity from suit in federal court pursuant to the Eleventh Amendment.  *See Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 616 (2002) ("The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States and by its own citizens as well.") (citations omitted) (professor of state university sued state university board of regents); *Weinberger v. State of Okla., ex rel. Bd. of Regents of Okla. Agric. & Mech. Coll.*, No. CIV-06-67, 2007 WL 593572, at * 8 (W.D. Okla. Feb. 22, 2007) ("Thus, state colleges and universities . . . are entitled to Eleventh Amendment immunity from suit in federal court absent waiver or a valid abrogation by Congress.").  The Supreme Court has recognized only two instances in which an individual may sue a state or state agency: (1) where the suit is authorized by Congress, and (2) where a state voluntarily waives its sovereign immunity. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

---

dismisses the third cause of action on the basis of Eleventh Amendment immunity.

14

In his response brief, Dahshan did not address OU's Eleventh Amendment argument.[7] Dahshan has not shown, and cannot show, that his state-law claim for violation of Oklahoma public policy was authorized by Congress.  Nor has Dahshan presented any facts, evidence, or argument that the State has waived immunity for either a *Burk* tort or an OADA claim.  Accordingly, Dahshan has not met his burden of proving subject matter jurisdiction, and such claim must be dismissed. *See Weinberger*, 2007 WL 593572, at * 8 (concluding that the plaintiff had made no argument that the defendant had waived its immunity with respect to the state law breach of contract claim and dismissing claim without prejudice); *Osborne v. Okla. Employment Sec. Comm'n*, No. CIV-05-1500, 2006 WL 2090089, at * 4 (W.D. Okla. July 25, 2006) (explaining that agencies of the State of Oklahoma cannot be sued in federal court for *Burk* torts).

C.    Fourth and Fifth Causes of Action - State Law Torts Against Donovan and Block

Defendants contend that Donovan and Block, both state employees, are shielded from liability for the state-law tort claims based on statutory and qualified immunity.  Defendants also argue that, even assuming Donovan and Block are subject to suit, the fourth and fifth causes of action fail to state a claim for which relief can be granted.

1.    *Statutory Immunity Pursuant to OGTCA*

The OGTCA immunizes state employees from tort liability so long as they are acting within the scope of their employment.  *See* Okla. Stat. tit. 51, § 152.1(A) ("The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their

---

[7] Dahshan's arguments as to the third cause of action are:  (1) he does not have an adequate statutory remedy; and (2) he should be excused from the exhaustion requirement of the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151 *et seq.* ("OGTCA") because his claim arises under the OADA.  (*See* Pl.'s Resp. to Defs.' Mot. to Dismiss 8-10.)  Because OU enjoys sovereign immunity, the Court need not reach these arguments.

employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts."); *Mustain v. Grand River Dam Auth.*, 68 P.3d 991, 998 (Okla. 2003) (explaining that, in passing OGTCA, the legislature "codified its version of sovereign immunity for the state, its political subdivisions, and for all their employees acting within the scope of employment"); *Carswell v. Okla. State Univ.*, 995 P.2d 1118, 1123 (Okla. 1999) ("The Tort Claims Act immunizes the state, its political subdivisions and all their employees acting within the scope of employment except to the extent waived by the Act."). For purposes of this lawsuit, Donovan and Block are state "employees," as defined by the OGTCA, because all allegedly wrongful actions were committed while Donovan and Block were acting in an administrative capacity, as opposed to while practicing medicine. *See* Okla. Stat. tit. 51, § 152(6)(b) (providing that "physicians acting in an administrative capacity" are employees of the state and that "[p]hysician faculty members and staff of the University of Oklahoma Health Sciences Center" are employees of the state when they are "acting in an administrative capacity or engaged in teaching duties").

Pursuant to the OGTCA, "'[s]cope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . but shall not include corruption or fraud." Okla. Stat. tit. 51, § 152(11); *Carswell*, 995 P.2d at 1123 ("Employees are within the scope of employment for purposes of the [OGTCA] when acting in good faith within the duties of office or employment or while carrying out lawfully assigned tasks."). An employee's actions are not in the scope of employment if the employee "acted maliciously or in bad faith." *Pellegrino v. State of Okla., ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003). As a general rule, torts that include elements of bad

faith or malice are considered outside the scope of employment.  *See Nail v. City of Henryetta*, 911 P.2d 914, 916 (Okla. 1996).

Dahshan alleges that Donovan and Block committed the intentional torts of intentional infliction of emotional distress ("IIED") and tortious interference with contract by engaging in a pattern of discriminatory and harassing conduct designed to force Dahshan to resign.  IIED includes an element of bad faith; therefore, if committed, it was committed outside the scope of Donovan and Block's employment with OU.  *See McMullen v. City of Del City*, 920 P.2d 528, 531 (Okla. Civ. App. 1996) ("There is no way to prove a claim for outrage if the defendant has acted in good faith.").  Tortious interference with contract includes an element of malice; therefore, if committed, it was also committed by Donovan and Block outside the scope of their employment with OU.  *See Johnson v. Nasca*, 802 P.2d 1294, 1297 (Okla. Civ. App. 1990) (second element of claim is that the interference was wrongful and malicious).[8]  *Cf. Parker v. City of Midwest City*, 850 P.2d 1065, 1068 (Okla. 1993) (holding that a plaintiff could not possibly hold a governmental entity liable for malicious prosecution, because the only way to prevail on such a claim would be to present evidence which necessarily took the bad actors outside the scope of their employment).  Accordingly, Donovan and Block are not shielded from liability by the statutory immunity provided in the OGTCA.

---

[8]  If the fifth cause of action is construed as one for tortious interference with prospective economic advantage, this tort also requires malice.  *See Overbeck v. Quaker Life Ins. Co.*, 757 P.2d 846, 848 (Okla. Ct. App. 1984) (recognizing tort of tortious interference with prospective economic advantage but dismissing claim in that case because alleged facts did "not indicate malicious or even intentional conduct").

17

### 2.      Qualified Immunity

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Eidson v. Owens*, 515 F.3d 1139, 1145 (10th Cir. 2008) (quotation omitted).  However, qualified immunity does not apply to state-law claims and has no application in this case. *See id.* (holding that qualified immunity was not a defense to state-law malpractice claim); *see also Jenkins v. City of New York*, 478 F.3d 76, 86 (2d Cir. 2007) (cited in *Eidson*) (stating that qualified immunity "protects an official from liability under federal causes of action but is not generally understood to protect officials from claims based on state law").

### 3.      Failure to State a Claim - IIED

Oklahoma recognizes IIED as an independent tort.  *Eddy v. Brown*, 715 P.2d 74, 76 (Okla. 1986).  "An action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress." *Miller v. Miller*, 956 P.2d 887, 900 (Okla. 1998).   "Intentional infliction of emotional distress does not provide redress for every invasion of emotional serenity or every anti-social act, and it does not protect mere hurt feelings, no matter how justified." *Id.*  Therefore, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  *Id.* at 901 (quotation omitted). "The test is whether the alleged tortfeasor's conduct is simply one of those unpleasant examples of human behavior which we all must endure from time to time, or whether it has so totally and completely exceeded the bounds of acceptable social interaction that the law must provide redress." *Id.*  The Oklahoma Supreme Court draws "the line between the acceptable and the unacceptable" in

18

accordance with Comment d to § 46 of the Restatement (Second) of Torts ("§46"). *Id.* Comment

d provides:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d. The court has cautioned that "[n]ot every abusive

outburst or offensive verbal encounter may be converted into a tort; on the contrary, it would be

indeed unfortunate if the law were to close all the safety valves through which irascible tempers

might legally blow off steam." *Eddy*, 715 P.2d at 77.

     With respect to the trial court's role in screening claims for IIED, it is the court's

"responsibility initially to act as gatekeeper: to determine whether the defendant's conduct may

reasonably be regarded as sufficiently extreme and outrageous to meet the § 46 standards." *Miller*,

956 P.2d at 901. "Only when it is found that reasonable people would differ in an assessment of this

central issue may the tort of intentional infliction of emotional distress be submitted to the jury."

*Id.* When the allegedly outrageous behavior takes place in a work setting, "it is reasonable for the

trial court to consider the overall atmosphere of the work-place setting as well as the plaintiff's own

conduct in making its initial assessment of a defendant's conduct." *Anderson v. Okla. Temp. Servs.,*

*Inc.*, 925 P.2d 574, 577 (Okla. Civ. App. 1996); *see also Eddy*, 715 P.2d at 77 ("The outrageous and

extreme nature of the conduct to be examined should not be considered in a sterile setting, detached

from the milieu in which it took place. The salon of Madame Pompadour is not to be likened to the

rough-and-tumble atmosphere of the American oil refinery.").

19

Defendants argue that, assuming all of Dahshan's allegations are true and construing them in their most favorable light, the allegations are insufficient to state a claim for IIED because the conduct consists merely of insults, indignities, annoyances, petty oppressions, or other trivialities that a reasonable employee must be expected to endure.  The Court disagrees, at least for purpose of this motion to dismiss.  Dahshan alleges that Defendants engaged in an ongoing pattern of behavior designed to force him to resign his position and that Defendants did so, at least in part, based on his Muslim religion and/or his Egyptian nationality.  Defendants allegedly did so in the setting of a medical university, which is not an atmosphere in which one typically expects to endure a certain degree of harassment or horseplay.  In addition, Dahshan alleges that he has "taken family medical leave to cope with the stress and ill effects it has had on his health."  (Compl. ¶ 35.)  In light of the allegations of religious and ethnically charged statements, coupled with deliberate attempts to force Dahshan out of his faculty position, Dahshan has pled sufficient facts to state a claim for IIED.  *See Lasley v. Hershey Foods Corp.*, 35 F. Supp. 2d 1319, 1323-24 (D. Kan. 1999) (denying motion to dismiss where plaintiff alleged racially hostile work environment, including a poster depicting two monkeys on the company bulletin board, racial slurs being written in plaintiff's work area, and management stating they "would like to see the niggers gone").

4.      *Failure to State a Claim - Tortious Interference with Contract*

Dahshan alleges that Donovan and Block "intentionally, willfully, and maliciously interfered" with his "contractual and business relationships with OU."  (Compl. (First Case) ¶ 58.) Defendants move for dismissal of this claim on grounds that (1) Dahshan does not have a contract with OU; (2) Donovan and Block's actions were privileged because they were acting within the scope of their employment; and (3) Dahshan has failed to allege damages.

20

Defendants' first argument fails because Oklahoma recognizes tortious interference with prospective economic advantage, as well as tortious interference with an actual contractual relationship. *See Gonzalez v. Sessom*, 137 P.3d 1245, 1249 (Okla. Civ. App. 2006); *McNickle v. Phillips Petroleum Co.*, 23 P.3d 949, 953-94 (Okla. Civ. App. 2001); *Overbeck*, 757 P.2d at 847-49; *see also Harman v. Okla. ex rel. N. Okla. Bd. of Regents*, No. 07-327, 2007 WL 1674205, at * 3 (W.D. Okla. 2007) (concluding that "[a]lthough there apparently is no Oklahoma Supreme Court authority directly recognizing [a tortious interference with prospective economic advantage] claim in the at-will employment context . . . lower Oklahoma courts have recognized the cause of action without hesitation"). Thus, an actual contract is not a requirement for recovery. Further, Dahshan's Complaint, which must be taken as true, alleges that a contractual relationship exists. The Court has already rejected Defendants' second argument regarding the scope of employment, *see supra* Part IV.C.1, and therefore finds Donovan and Block's alleged actions were not privileged or within the scope of their employment. As to Defendants' final argument, the Court finds that Dahshan has alleged sufficient damages arising from denials of raises and promotions. *See Harman*, 2007 WL 1674205, at * 3 (finding that an employee had stated a claim for tortious interference with prospective economic advantage against her supervisors where she alleged that her supervisors were responsible for denial of a promised raise).

## V.      Motion to Dismiss or Consolidate - Second Case

Defendants move to dismiss the Second Case because (1) Dahshan "prematurely" requested his right to sue letter on the Second Charge, (2) Dahshan's "only new factual allegations are not encompassed in his Second Charge," and (3) the Second Case is "duplicative" and therefore improper. (Mot. to Dismiss or Consolidate 4-5.)  It seems Defendants' problem with the Second

Case is that is an impermissible "attempt to circumvent the inevitable dismissal of the [Title VII claims] as time-barred." (*Id.* 2.)  The Court rejects Defendants' arguments in support of outright dismissal of the Second Case.  Such arguments were difficult to discern and not supported with relevant authority. As argued by Dahshan, the retaliation claim in the First Case "is based upon Dahshan's engagement in the protected activity of reporting discrimination internally to OU's office of Equal Employment Opportunity," while the retaliation claim in the Second Case is "additionally based upon Dahshan's protected activity in filing a charge of discrimination with the EEOC." (Resp. to Mot. to Dismiss or Consolidate 1-2.)  Although it is more common to move to amend a Title VII claim to include additional acts or theories of retaliation (as Dahshan did to add the sixth and seventh causes of action in the First Case), the Court has found no procedural error in filing the Second Case.  Considering all of Defendants' arguments, the Court does not find any grounds for dismissal of the Second Case.

Dahshan does not object to Defendants' alternative request that the two cases be consolidated.  A court may consolidate two actions pursuant to Federal Rule of Civil Procedure 42(a) if they present common questions of law or fact.[9]  Here, the First and Second Cases are nearly identical and certainly present common questions of law or fact.  Accordingly, the Court finds that consolidation of the two actions for all purposes, including trial, is appropriate, and the Court hereby consolidates the two cases pursuant to Rule 42(a)(2).

---

[9] Defendants cite Federal Rule of Civil Procedure 18 as the rule governing their motion to consolidate.  However, Rule 42(a) is the proper procedural basis for consolidation of two separately filed cases.

22

VI.     **Conclusion**

Defendants' Motion to Dismiss (Doc. 8), filed in Case Number 08-CV-186-TCK-FHM, is

GRANTED in part and DENIED in part.  It is granted as to Dahshan's third cause of action against

OU for violation of Oklahoma public policy and denied in all other respects.  Defendant's Motion

to Dismiss (Doc. 10), filed in Case Number 08-CV-370-TCK-SAJ, is DENIED.  Defendant's

Motion to Consolidate (Doc. 13), filed in Case Number 08-CV-370-TCK-SAJ, is GRANTED.  The

Court ORDERS that *Dashan v. State of Oklahoma, ex rel. Board of Regents of the University of*

*Oklahoma, et al.*, Case Number 08-CV-186-TCK-FHM, is hereby consolidated for all purposes with

*Dashan v. State of Oklahoma, ex rel. Board of Regents of the University of Oklahoma*, Case Number

08-CV-370-TCK-SAJ.  Case number 08-CV-186-TCK-FHM is designated as the base file. All

further pleadings, motions and other documents shall bear only the title and designation of case

number 08-CV-186-TCK-FHM, with the words "Base File" typed below the case number.  All

documents shall be filed in the base file only.

ORDERED THIS 12th DAY OF NOVEMBER, 2008.

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**